IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOLLY LYNN HORVATH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Civil Action No. 19-788 |
| ) | |
| ANDREW M. SAUL, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

AMBROSE, Senior District Judge.

## **OPINION AND ORDER**

### **Synopsis**

Plaintiff Holly Lynn Horvath ("Horvath") seeks judicial review of the Social Security Administration's denial of her claim for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Horvath alleges a disability onset date of October 1, 2014. (R. 15) The ALJ denied her claim following a hearing at which both Horvath and a vocational expert ("VE") appeared and testified. Horvath then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 11 and 13. Horvath filed an additional Motion based upon an Appointments Clause argument at No. 15, which will be addressed in a separate Opinion. For the reasons set forth below, the ALJ's decision is affirmed.

### **Opinion**

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995

(1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

    II. <u>The ALJ's Decision</u>

As stated above, the ALJ denied Horvath's claim for benefits. More specifically, at step one of the five step analysis, the ALJ found that Horvath had not engaged in substantial gainful activity since the alleged onset date. (R. 17) At step two, the ALJ concluded that Horvath suffers from the following severe impairments: affective disorders, borderline intellectual functioning, and alcohol abuse. (R. 17-18) At step three, the ALJ concluded that Horvath does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19) Between steps three and four, the ALJ found that Horvath has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain nonexertional limitations. (R. 20-26) At step four, the ALJ found that Horvath is unable to perform past relevant work. (R. 26) At the fifth step of the analysis, the ALJ concluded that, considering Horvath's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 26-27) As such, the ALJ concluded that Horvath was not under a disability during the relevant period of time. (R. 27)

III. <u>Discussion</u>[1]

(1) Severe Impairments

Horvath faults the ALJ for failing to consider her anxiety and mild intellectual disorder[2] at step two of the sequential analysis. I agree that the ALJ's analysis is deficient in this respect but such deficiency is not fatal. Any error was harmless because the ALJ found in Horvath's favor at step two. See Salles v. Commissioner of Soc. Sec., 229 Fed. Appx. 140, 145 n. 2 (3d Cir. 2007) ("[b]ecause the ALJ found in Salle's favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."), citing, Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005). Additionally, it is clear from the decision that the ALJ considered Horvath's anxiety and mental impairments throughout the sequential analysis. Consequently, I find no error.

(2) Step Three - Listings

As stated above, at the third step of the analysis, the ALJ determined that Horvath did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Listings 12.04 and 12.06. (R. 18-19) Horvath contends that the ALJ should have considered Listing 12.05 as well, and that she erred in failing to do so.

---

[1] Although Horvath initially alleged both physical and mental impairments, she only discusses her mental impairments on appeal. Accordingly, I will not address any findings related to her alleged physical impairments.
[2] Horvath also references her bulimia but provides no evidence that this constitutes a severe impairment other than her testimony that she binges and purges at night in her parents' home. (R. 58) Erin Cavill, a therapist, completed a Mental Residual Functional Capacity Statement, which Dr. Aponte subsequently signed, noted, under "additional comments and remarks," that Horvath suffers from an eating disorder," but she does not directly link that disorder to any functional limitations. (R. 724-727) Consequently, I find the ALJ's step two analysis in this regard to be supported by substantial evidence of record.

4

As the Third Circuit Court states, "[i]n determining whether a claimant has met his burden of showing that his impairment meets or equals a listed impairment, it is the Commissioner's duty to first identify and specify those listings that potentially apply to the claimant's impairments." *Mann v. Commissioner of Social Sec. Admin.*, 638 Fed. Appx. 123, 125 (3d Cir. 2016). Indeed, identifying the most applicable listing is within the "realm of the ALJ's expertise" and requiring the ALJ to identify the relevant listings "is consistent with the nature of Social Security disability proceedings." *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 120 n. 2 (3d Cir. 2000). Given that these proceedings are "inquisitorial rather than adversarial" in nature and because "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits," the responsibility for identifying the relevant Listings is appropriately placed on the ALJ. *See Sims v. Apfel*, 530 U.S. 103, 120 S. Ct. 2080 (2000).

As an initial matter then, I agree for purposes of argument that the ALJ should have addressed Listing 12.05 in this context.  Nevertheless, the Third Circuit Court has stated that such a deficiency can, in certain cases, constitute a harmless error. *See Rivera v. Comm'r. of Soc. Sec.*, 164 Fed. Appx. 260, 263 (3d Cir. 2006).  "Harmless error exists in this context when, for example, a reviewing court examines the evidence at issue and finds 'abundant evidence supporting the [ultimate] position taken by the ALJ, and comparatively little contradictory evidence.'" *Wiberg v. Colvin*, Civ. No. 11-494, 2014 WL 4180726, at * 17 (D. Del. Aug. 22, 2014), *quoting, Rivera*, 164 Fed. Appx. at 263. *See also, Rosa v. Comm'r. of Soc. Sec.*, Civ. No. 12-5176, 2013 WL 5322711, at * 7-8 (D. N.J. Sept. 20, 2013).  After careful review, I agree with the Defendant that the ALJ's failure to address Listing 12.05 constitutes harmless error.

5

Listing 12.05B[3] has three requirements. A claimant must have: (1) a significantly subaverage general intellectual functioning; (2) significant deficits in adaptive functioning; and (3) evidence that the disorder began prior to the age of 22. Both Listing 12.05B(2) and Listings 12.04B and 12.06B share the same criteria. That is, they require an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. The ALJ considered each of these criteria and determined that, because Horvath's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the criteria set forth in paragraph B were not satisfied.

Specifically, the ALJ concluded that Horvath has only "moderate" limitations with respect to understanding, remembering, or applying information. (R. 19) The ALJ explains that, although Horvath contends that she has trouble with multi-step tasks, following instructions and making decisions, the evidence demonstrates that she has experienced improvement with reduced alcohol consumption and the use of medication. (R. 19, citing Exs. 5F, 21F, 6E). With respect to interacting with others, the ALJ found that Horvath has a moderate limitation. She acknowledged that Horvath has social anxiety and isolates herself from crowds and reports that she has no friends and socializes primarily with her family. (R. 19) Yet the ALJ found that the records indicate that Horvath is able to attend regular medical appointments, drinks "socially," lives with

---

[3] Listing 12.05 is met when the requirements in paragraphs A or B are met. Listing 12.05A is satisfied by a demonstration of significantly subaverage general intellectual functioning; significant deficits in adaptive functioning manifested by dependence upon others for personal needs; and evidence that the condition manifested before the age of 22. Because Horvath makes no reference to these requirements, and given her repeated reference to IQ scores, which is related to inquiry under 12.05B, the Court presumes she is not pursuing a claim under 12.05A.

6

her parents, and is able to shop for groceries in stores. (R. 19, citing Exs. 6E, 27F). As to concentrating, persisting, or maintaining pace, again the ALJ found Horvath to have a moderate limitation. Specifically, the ALJ observed that, although Horvath had documented issues with focus and concentration as well as reduced memory skills, evidence indicated that she demonstrated improvement with reduced alcohol consumption and the use of psychotropic medication. (R. 19, citing Exs. 5F, 21F). The ALJ further noted that Horvath is able to perform simple tasks such as performing household chores like feeding pets, preparing simple meals, cleaning dishes, doing laundry and managing her finances. (R. 19, citing Ex. 6E). Finally, with respect to adapting or managing oneself, the ALJ determined that Horvath has moderate limitations.(R. 19) The ALJ explained that, despite her reported symptoms of depression and anxiety and history of significant alcohol abuse, she presented at examinations with good grooming and hygiene. (R. 19, citing Exs. 5F, 21F) Further, the ALJ repeated her observations regarding Horvath's ability to perform household tasks.

Although the ALJ made these conclusions within the context of Listing 12.04 and 12.06, the requirements are identical with respect to Listing 12.05, and, as stated above, there is substantial evidence indicating that Horvath could not have satisfied the requirements of Listing 12.05B(2).[4] Indeed, Horvath makes no meaningful analysis with respect to these criteria. Rather, she focuses her argument upon her IQ scores and any alleged errors the ALJ may have committed in connection with determining such scores under 12.05B(1). Yet even accepting for purposes of argument that the ALJ erred in this regard, Horvath only demonstrates that the ALJ erred with respect to her finding

---

[4] In so holding, I note that Horvath did not challenge the ALJ's findings under Listing 12.04 or 12.06.

regarding Listing 12.05B(1). She makes no effort to demonstrate error with respect to 12.05B(2) or (3). Because I find that the ALJ's findings regarding the B criteria are supported by substantial evidence of record, any error committed by the ALJ in conducting the step three analysis is harmless and does not require a remand.

    (3) Residual Functional Capacity

Finally, Horvath faults the ALJ for failing to include in the RFC her borderline intellectual functioning. *See* ECF Docket No. 12, p. 16-20. Her argument rests upon the ALJ's assessment of the medical opinions. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.*, § 404.1527(c)(2). The opinion of a treating physician need not be viewed uncritically, however. Rather, only when an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. *Id.* Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the

opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. *Id.*, § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.*, § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 404.1527(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of

9

his final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r. of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008).

Here, Horvath's argument focuses upon the weight the ALJ accorded the opinions offered by Dr. Aponte and Dr. Ostrich.[5] The ALJ explained that she gave Ostrich's opinion great weight because it is supported by the record. This is an appropriate and valid reason for crediting evidence. See 20 C.F.R. § 404.1527; 416.927. Further, substantial evidence supports her finding in this regard. (R. 23) Indeed, Horvath offers nothing to undermine Ostrich's findings other than IQ testing which occurred after he rendered his opinion. Yet the ALJ considered the IQ testing and acknowledged the findings. She determined that the restrictions in the RFC "adequately accommodate the claimant's borderline intellectual functioning." (R. 22) Additionally, she gave the opinion authored by Dr. Groves, who conducted the IQ testing, only "partial" weight. (R. 23) The ALJ noted that Groves had only limited clinical contact with Horvath and that Horvath's outpatient mental health records portray an average intellectual ability based upon regular examinations over a period of three years. (R. 23) Indeed, the ALJ explained that "the observations of the claimant's examiners regarding

---

[5] Horvath also urges that the ALJ failed to discuss or acknowledge the findings offered by Dr. Urrea, but I reject this contention. First, Dr. Urrea did not offer a formal opinion. Rather, the record simply includes a few treatment records in which he refers to Horvath as having major depression. Yet those same records also describe Horvath as presenting with a chief complaint of alcohol withdrawal, as suffering from severe alcohol abuse disorder and drinking 12-16 beers daily, and as working at the Dollar Tree store. (R. 372-73, 488, 493) It is clear from a review of the ALJ's opinion, and her reference to Horvath's history of alcohol abuse, her depression, and her citations to the relevant records, that the ALJ considered Dr. Urrea's records even if she didn't specifically mention his name. (R. 19, 21, 22, 23, citing Ex.2F, 5F, 21F)

her intellectual skills suggests that she displays a higher level of functional ability." (R. 23) Further, the ALJ reasoned, Horvath's has held primarily skilled and semi-skilled jobs in the past and the evidence does not indicate that her intellectual abilities impacted her work. (R. 23) The ALJ's consideration of all of this evidence belies any contention that she ruled in contravention of SSR 85-16.

I similarly reject Horvath's contention that the ALJ erred in giving Dr. Aponte's opinion "little" weight. The ALJ explains that the findings are not supported by the treatment records; that inpatient treatment was only required for alcohol-related problems; that other mental health issues have been managed with outpatient counseling and medication; and that Horvath has experienced improvement with abstinence from alcohol and the use of medication. (R. 24) Further, Horvath is able to perform activities of daily living. (R. 24) These are valid reasons for discounting the opinion and the ALJ's findings are supported by substantial evidence of record.

Horvath's arguments concerning the assessment of medical evidence amounts to little more than a request for a re-weighing of the evidence of record. However, I cannot conduct a *de novo* review. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings. Here, the ALJ's findings are so supported. Further, because those findings are supported by substantial evidence of record, the ALJ's RFC assessment similarly is supported by substantial evidence of record. Consequently, there is no basis for remand.[6]

---

[6] Horvath has filed a second Motion for Summary Judgment (ECF No. 15). This Motion is not based upon the substance of the ALJ's decision. Rather, it is based upon the contention that the ALJ was not constitutionally appointed according to the Appointments Clause of the United States Constitution and the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). This Motion and argument will be addressed in a separate Opinion and Order.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOLLY LYNN HORVATH    Plaintiff, | ) ) ) | |
| -vs- | ) ) | Civil Action No. 19-788 |
| ANDREW M. SAUL,COMMISSIONER OF SOCIALSECURITY, | ) ) ) ) | |
|    Defendant. | ) ) | |

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 7th day of May, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED and the Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED. Because a Motion for Summary Judgment (Docket No. 15) remains pending, this case shall NOT be marked "closed."

                    BY THE COURT:

                    /s/ Donetta W. Ambrose
                    Donetta W. Ambrose
                    United States Senior District Judge

12